FILED

2010 Mar-29  PM 04:35
U.S. DISTRICT COURT
N.D. OF ALABAMA

## IN THE UNITED STATES DISTRICT COURT
## FOR THE NORTHERN DISTRICT OF ALABAMA
## EASTERN DIVISION

| | | |
|---|---|---|
| LISA WEATHERS, | ] | |
| | ] | |
|     Plaintiff, | ] | |
| | ] | |
| v. | ] | CV-09-BE-0097-E |
| | ] | |
| BILL PARTRIDGE and CITY OF | ] | |
| OXFORD, ALABAMA, | ] | |
| | ] | |
|     Defendants. | ] | |

## MEMORANDUM OPINION

This case comes before the court on "Defendants' Motion for Summary Judgment" (doc. 15).  Plaintiff Lisa Weathers, a sergeant in the Oxford police department, asserts claims of gender discrimination, in violation of Title VII and her constitutional rights through § 1983, against Defendants Bill Partridge and the City of Oxford, Alabama.  Defendant Bill Partridge is Oxford's police chief.  Specifically, Sergeant Weathers alleges that the Defendants failed to promote her to lieutenant, required her to work excessive weekends, caused the United States Department of Labor to pay her a disproportionate back pay award, disciplined her more harshly than men, required her to work undesirable assignments, and subjected her to gender-based harassment. Defendants assert *res judicata*, untimeliness, failure to exhaust administrative remedies, and substantive legal defenses.  The parties have fully briefed the motion. The court has reviewed the submissions and applicable law.  For the reasons stated below,  the court will GRANT Defendants' motion for summary judgment (doc. 15).  The court will simultaneously enter a separate order to that effect.

# FACTS[1]

*The Oxford Police Department and Plaintiff Weathers - The Beginning*

The Oxford Police Department ("OPD") employs forty-six police officers; the ranks, in increasing order, are officer, sergeant, lieutenant, captain, assistant chief, and chief.  The OPD Patrol Division has three shifts: the first between 7:00 am and 3:00 pm; the second between 3:00 pm and 11:00 pm; and the third between 11:00 pm and 7:00 am with a lieutenant and a sergeant lead each shift.  The Detective Division also has a lieutenant/sergeant team.  Sergeant Weathers started as an officer for the OPD in March of 1986.  Defendant City promoted her to sergeant in 1996.

*Excessive Weekends Claims*

Sergeant Weathers served as third-shift sergeant from 1996 until December of 2005.  She alleges that while working as a third-shift sergeant, she worked every weekend from 1996 to 2004 because the City allowed her male supervisor to have every weekend off.

*Disproportionate Discipline Claims*

In the 1990s, Plaintiff's supervising lieutenant gave her a written warning about derogatory statements that she made about supervisors and other officers.  In September 2002, the City's Accident Review Board suspended Sergeant Weathers five days for an accident with her patrol car.

*Undesirable Assignments Claims*

In December 2005, the Chief transferred Sergeant Weathers to supervise the City Jail.

---

[1]The court presents the facts in the light most favorable to the plaintiff, the party opposing summary judgment. *Young v. City of Palm Bay, Fla.*, 358 F.3d 859, 860 (11th Cir. 2004).  These facts are for summary judgment purposes and may not be the true facts.

Sergeant Weathers worked first shift during her tenure at the jail.  The OPD police chief has full legal authority to transfer one officer from one position to another position so long as the officer is not transferred out of her classification or rank.  The City specifically drafted this rule so that the best person is assigned to the position for which she is better qualified.  Defendants contend that the reasons for Plaintiff's transfer were two-fold: 1) a permanent jail supervisor "freed up" the shift of lieutenants and sergeants who had been supervising the jail in addition to their other duties, and 2) Sergeant Weathers had caused turmoil during her entire tenure on the third shift. Sergeant Weathers denies that she caused turmoil during her *entire* nine-year tenure on the third shift.

Chief Partridge testified that numerous officers on the third shift wanted to leave the OPD because of the way Sergeant Weathers ran the third shift.  Partridge also testified that Sergeant Weathers required officers to fetch personal items for her.  Sergeant Chip Owens testified that people did not want to work the third shift because Sergeant Weathers was on the third shift. Owens also said that Sergeant Weathers made the officers she supervised bring cokes and cigarettes to her house when they should have been on duty. Lieutenant Steven Palmer said that Sergeant Weathers tried to do things that were not part of her job.

Because former Chief Merrill and Chief Partridge believed that Plaintiff's poor supervisory abilities were the cause of the third shift's low morale, Chief Merrill transferred Sergeant Weathers to the jail where she would have less supervisory authority over the officers. The Defendants assert that Sergeant Weathers still had some supervisory duties because she supervised all patrol officers while they were in the jail.

According to Defendant Partridge, the position of jail supervisor is a very important

position.  As jail supervisor, Plaintiff's duties included overseeing the jail operations, supervising all of the inmates, reviewing the paperwork submitted by all the patrol officers and dispatchers, handling all the bond issues, being the "face" of the OPD at the jail, and handling any crime and other reports made by citizens when they came into the station.  However, according to the Defendants, Sergeant Weathers began to cause turmoil at the jail shortly after her transfer.  For example, people in the communications office complained that Sergeant Weathers was interfering with their work.  Also, Sergeant Weathers received written discipline for her conduct, including leaving her weapon unattended in the communications area, allowing inmates to make multiple store runs and phone calls, and making phone calls for inmates.  Defendant Partridge also prohibited Sergeant Weathers from interfering with the magistrate and communications offices.

Sergeant Weathers worked as jail supervisor until May of 2007 when she took six to seven weeks of medical leave for an abdominal surgery.  After she returned to work, Sergeant Weathers worked one day at the jail before Chief Merrill transferred her to the Oxford Lake Recreational Complex (the "Complex") on July 2, 2007.  The Complex is thirty-four acres of City property that includes the civic center building and other buildings, a children's playground, three tennis courts, seven covered picnic pavilions, horseshoe pits, a volleyball area, a swimming pool, a par-three golf course, a driving range, four softball fields, five baseball fields, batting and pitching cages, a walking track around the lake, and huge parking lots.

Because of an incident of attempted rape at the Complex, Merrill believed that assigning a ranking officer to a permanent post during the Complex's business hours would deter crime and reassure the public.  Merrill assigned Plaintiff Weathers to an 8:00 a.m. to 4:00 p.m.

shift–the general time frame that most people visited the Complex.  Both Merrill and Partridge assert that Plaintiff's position at the Complex is a very necessary assignment and that if the OPD had more officers, someone would patrol the Complex at all times.  Merrill further asserts that, although at the Complex, Plaintiff Weathers remains a sergeant and is serving in a much needed position.  According to the Defendants, Sergeant Weathers still has some supervisory duties because she supervises all patrol officers while they are at the Complex; but Sergeant Weathers contends that she does not supervise other officers.  Further, Sergeant Weathers asserts that the Defendants have never assigned anyone to patrol the Complex when Sergeant Weathers was unavailable, off-duty, or on vacation.  Nevertheless, the parties agree that other sergeants have expressed a desire to have Plaintiff's assignment at the Complex.

On July 5, 2007, after Sergeant Weathers' abdominal surgery, her physician informed the City that she required light duty until further notice.  In response, Partridge told Sergeant Weathers that she did not have to wear the full utility belt; instead, Partridge allowed Sergeant Weathers to wear her firearm on a regular belt and keep her radio handy.  Sergeant Weathers claims that the Defendants denied her equal job assignments by allowing male officers who have had much less invasive surgeries to come back on light duty and radically modify their uniforms to accommodate their recovery.  However, on July 8, 2007, Lieutenant Palmer saw Sergeant Weathers going to perform off-duty private security work in full uniform wearing her duty gun belt, flashlight, and cuffs.  On September 7, 2007, Plaintiff's doctors released her "to do her usual activities without any restrictions at her work."

Defendant Partridge replaced Merrill as chief in 2007.  Partridge claims that he decided to keep Sergeant Weathers stationed at the Complex because many people told him that they felt

safer now that a police officer patrolled the Complex during the day. However, Partridge also asserts that he received complaints about Plaintiff's behavior at the Complex and had to verbally discipline her. Sergeant Weathers disputes Partridge's contentions.

*Disproportionate Back Pay Claims*

On April 3, 2006, the U.S. Department of Labor's Wage and Hour Division audited the City and determined that many OPD employees were due back pay overtime. As a result, the City paid Sergeant Weathers over $4,500.00 for back pay overtime, the seventh highest amount of back pay awarded in the OPD. Plaintiff's disproportionate back pay claim is based on her allegation that she received less back pay than similarly situated men because the Defendants provided erroneous information to the Department of Labor during the audit. Sergeant Weathers is currently the highest paid sergeant in the OPD.

*Failure to Promote Claims*

Additionally, Sergeant Weathers claims that the Defendants repeatedly passed over her and instead promoted men to lieutenant in violation of Title VII and her constitutional rights. The three latest promotions to lieutenant by the City were (1) Terry French in December 2005, (2) Steve Palmer in April 2006, and (3) Shawn Gibson on March 7, 2007. Before each of these promotions, Chief Merrill requested a list of eligible persons from the civil service board of the City of Oxford ("OCSB"), an independent legal entity created by the Alabama legislature. The Oxford Civil Service Act and the Rules of the OCSB set forth the procedure for promotions within the OPD.

Section 12 of the Act states that "[w]henever a vacancy exists in any position in the service of the City, it shall be filled by appointment of one of six persons who rank highest on the

appropriate eligible register of the Board." Rule I(5)(a) states that all appointments are made by the appointing authority (*i.e.* the mayor), after he has consulted with and received recommendations from the department head (*i.e.* the police chief), who is required to select a name from a list of no more than six names of those candidates certified by the OCSB. Rule VIII(1)(b)(2) of the OCSB states that only OPD members with three years of experience as sergeant and two years of experience as a patrol officer are eligible to serve as lieutenant. Rule VIII(3) states that whenever a vacancy exists in any position under Civil Service, if the board determines that the position should be filled from among regular employees, an examination "shall be given for the position."

Sergeant Weathers has been on the list of eligibles for every lieutenant opening since June of 1999. Less than six sergeants were eligible for promotion when Plaintiff Weathers applied for the lieutenant promotion in March 2007. Defendants contend that the OCSB is not required to give a test when less than six eligible candidates appear on the list of eligibles and that the OCSB Rules support this practice because Rule VIII(1)(c) states that when VII(1)(b) limits the group of eligibles to less than three applicants, the OCSB "shall make sufficient modification of these requirements to enable 3 or more employees to meet the entrance requirements for promotion."

Leon Smith has served as the City's mayor for twenty-six years. Although he has ultimate responsibility for hiring and firing of all OPD personnel, he generally defers to the recommendations of the police chief. The mayor must consider the candidate's ability to meet the public, credit rating, police record, physical condition, evidence of good health, and the ability to rotate shifts if required in deciding whom to promote to lieutenant.

Both Sergeant Weathers and Shawn Gibson were on the OCSB's list of eligible

candidates for the March 2007 lieutenant's vacancy.  Terry French and Steve Palmer were also on the list but they were not eligible for promotion because the City had already promoted them to lieutenant. Chief Merrill recommended Gibson for the 2007 lieutenant's vacancy, and the mayor promoted Gibson on March 6, 2007.  Gibson's promotion to lieutenant was effective on March 7, 2007.

Chief Merrill asserts that he recommended Gibson for promotion instead of Sergeant Weathers for many reasons, including Gibson's proven leadership and ability to effectively supervise others.  The parties agree that excerpts from Gibsons' personnel file support Merrill's choice.  Sergeant Weathers concedes that Gibson is a "fine man" and is qualified to serve as lieutenant.  Defendant Partridge did not become police chief until after Shawn Gibson received his promotion.

Excerpts from Plaintiff's personnel file indicate that in January of 2004, the OPD disciplined Sergeant Weathers by written warning for leaving her firearm unsecured in her purse on the counter of the booking room at the jail while prisoners were being booked.  In January 2005, the OPD disciplined Sergeant Weathers by written warning for failing to complete the twelve hours of training needed to keep up her certification.  Sergeant Weathers contends that the Defendants repeatedly denied her requests for training opportunities but allowed male officers to take advantage of those opportunities.  In September of 2005, Sergeant Weathers received written discipline for failing to review shift paperwork and failing to approve a bond prior to an inmate's release.

Other male officers have waited longer to be promoted than Sergeant Weathers.  Brian Waites, who was hired as a police officer at the same time as Sergeant Weathers, was promoted

to sergeant in 2005–ten years after Plaintiff's promotion to sergeant. The OPD hired Chip Owens as an officer three years after it hired Sergeant Weathers, but did not promote him to sergeant until 2007. Mike Hurst has served as a sergeant longer than Sergeant Weathers. The OPD hired Jeff Bell as an officer before it hired Ms. Weathers, but he still has not even been promoted to sergeant.

*Sexual Harassment Claims*

Sergeant Weathers also brings sexual harassment claims against the Defendants. She asserts that Defendant Partridge follows her when she goes on her lunch breaks. Sergeant Weathers testified that Partridge's following her was just an annoyance. Sergeant Weathers also asserts in her response to the Defendants' motion for summary judgment that "in unknown numbers of instances" her superiors, fellow supervisors, and subordinate male officers called her "Medusa," "Her Hitler," "Queen of the Damned," and "the Bitch" without rebuke.

*Plaintiff's Prior Lawsuits Against the City*

The instant case is the Plaintiff's fourth lawsuit against the City. In 1990, she filed her first lawsuit in federal court alleging gender discrimination; ultimately, the parties settled. In February 2003, Sergeant Weathers filed her second suit in state court for a declaration that her suspension for the September 2002 car accident was a denial of due process. The state court entered summary judgment for the Defendant and the Alabama Court of Civil Appeals affirmed the ruling.[2]

In December 2003, Sergeant Weathers filed her third suit in federal court again alleging gender discrimination. In that complaint, she made many of claims that she makes here,

---

[2]*See Weathers v. City of Oxford*, 895 So. 2d 305 (Ala. Civ. App. 2004).

including that the Defendant City should have promoted her to lieutenant, that the City should not have assigned her to the third shift, that she had to work too many weekends, that the City disciplined her too harshly for the 2002 wreck, and that she received a disproportionate overtime back pay award.  On October 7, 2004, Judge Propst of this court entered summary judgment on all claims in favor of the City because Plaintiff Weathers did not produce sufficient evidence to prove that the City's reasons for its employment actions were a pretext for discrimination.[3]

On September 7, 2007, Sergeant Weathers filed an EEOC charge that served as the predicate for this suit.  In her EEOC charge, Sergeant Weathers alleges that the Defendants have repeatedly retaliated and discriminated against her by failing to promote her to lieutenant. Plaintiff's failure to promote claims are the only claims contained in her EEOC charge.

## STANDARD OF REVIEW

Summary judgment is an integral part of the Federal Rules of Civil Procedure.  Summary judgment allows a trial court to decide cases when no genuine issues of material fact are present and the moving party is entitled to judgment as a matter of law.  *See* Fed. R. Civ. P. 56.  When a district court reviews a motion for summary judgment, it must determine two things: (1) whether any genuine issues of material fact exist; and if not, (2) whether the moving party is entitled to judgment as a matter of law.  Fed. R. Civ. P. 56(c).

The moving party "always bears the initial responsibility of informing the district court of the basis for its motion, and identifying those portions of 'the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any,' which it believes demonstrate the absence of a genuine issue of material fact."  *Celotex Corp. v. Catrett*, 477 U.S.

---

[3]*Weathers v. City of Oxford*, No. CV-03-PT-3255-E, slip op. (N.D. Ala. Oct. 7, 2004).

317, 323 (1986) (quoting Fed. R. Civ. P. 56).  The moving party can meet this burden by offering

evidence showing no dispute of material fact or by showing that the non-moving party's evidence

fails to prove an essential element of its case on which it bears the ultimate burden of proof.

*Celotex*, 477 U.S. at 322-23.  Rule 56, however, does not require "that the moving party support

its motion with affidavits or other similar materials *negating* the opponent's claim." *Id.*

Once the moving party meets its burden of showing the district court that no genuine

issues of material fact exist, the burden then shifts to the non-moving party "to demonstrate that

there is indeed a material issue of fact that precludes summary judgment." *Clark v. Coats &*

*Clark, Inc.*, 929 F.2d 604, 608 (11th Cir. 1991). Disagreement between the parties is not

significant unless the disagreement presents a "genuine issue of material fact."  *Anderson v.*

*Liberty Lobby, Inc.*, 477 U.S. 242, 251-52 (1986).  In responding to a motion for summary

judgment, the non-moving party "must do more than simply show that there is some

metaphysical doubt as to the material fact."  *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*,

475 U.S. 574, 586 (1986).  The non-moving party must "go beyond the pleadings and by [its]

own affidavits, or by the 'depositions, answers to interrogatories, and admissions on file,'

designate 'specific facts showing that there is a *genuine issue for trial*.'" *Celotex*, 477 U.S. at 324

(quoting Fed. R. Civ. P. 56(e)) (emphasis added); *see also* Advisory Committee Note to 1963

Amendment of Fed. R. Civ. P. 56(e), 28 U.S.C. app. ("The very mission of summary judgment

procedure is to pierce the pleadings and to assess the proof in order to see whether there is a

genuine need for trial.").  The moving party need not present evidence in a form admissible at

trial; "however, he may not merely rest on [the] pleadings." *Celotex*, 477 U.S. at 324.  If the

evidence is "merely colorable, or is not significantly probative, summary judgment may be

granted. *Anderson*, 477 U.S. at 249-50 (citations omitted).

In reviewing the evidence submitted, the court must "view the evidence presented through the prism of the substantive evidentiary burden," to determine whether the nonmoving party presented sufficient evidence on which a jury could reasonably find for the nonmoving party. *Anderson*, 477 U.S. at 254; *Cottle v. Storer Commc'n, Inc.*, 849 F.2d 570, 575 (11th Cir. 1988). The court must refrain from weighing the evidence and making credibility determinations, because these decisions fall into the province of the jury. *See Anderson*, 477 U.S. at 255; *Stewart v. Booker T. Washington Ins. Co.*, 232 F.3d 844, 848 (11th Cir. 2000); *Graham v. State Farm Mut. Ins. Co.*, 193 F.3d 1274, 1282 (11th Cir. 1999). Furthermore, all evidence and inferences drawn from the underlying facts must be viewed in the light most favorable to the non-moving party. *Graham*, 193 F.3d at 1282. The non-moving party "need not be given the benefit of every inference but only of every reasonable inference." *Id.* The evidence of the non-moving party "is to be believed and all justifiable inferences are to be drawn in [its] favor." *Anderson*, 477 U.S. at 255. After both parties have addressed the motion for summary judgment, the court must grant the motion *if* no genuine issues of material fact exist *and if* the moving party is entitled to judgment as a matter of law. Fed. R. Civ. P. 56.

## DISCUSSION

Plaintiff Lisa Weathers, an Oxford police sergeant, brings this gender discrimination case against the City of Oxford and Bill Partridge, the City's police chief, in his individual capacity. Asserting violations of her civil rights under Title VII and her constitutional rights through § 1983, Sergeant Weathers alleges that the Defendants treated her differently than men because of her gender. Specifically, Sergeant Weathers claims that the Defendants repeatedly failed to

12

promote her to lieutenant, required her to work excessive weekends and undesirable assignments, caused the Department of Labor to pay her disproportionate back pay, disciplined her more harshly than men, eliminated her supervisory responsibilities, and subjected her to discriminatory ridicule because she is a woman.

Defendants assert, for both procedural and substantive reasons, that no genuine issues of material fact exist and they are entitled to judgment as a matter of law on all of Plaintiff's claims. The court agrees.  First, the court will discuss the procedural reasons why the Defendants are entitled to summary judgment on some of Plaintiff's claims.  Then the court will discuss the substantive reasons why summary judgment is appropriate on the remainder of Plaintiff's claims.

A.    *Procedural Grounds for Granting Defendants' Motion for Summary Judgment*

    1.    Title VII claims against Defendant Partridge

Title VII only provides a cause of action against "employers." *See* 42 U.S.C. § 2000e-2(a).  "The relief granted under Title VII is against the *employer*, not individual employees whose actions would [allegedly] constitute a violation of the Act." *Bushby v. City of Orlando*, 931 F.2d 764, 772 (11th Cir. 1991) (emphasis in original).  Accordingly, individual capacity suits under Title VII are inappropriate. *Id.*  Thus, the court grants summary judgment in favor of Defendant Partridge on all of Plaintiff's Title VII claims.

Plaintiff's § 1983 claims against Defendant Partridge are not *procedurally* flawed because a plaintiff can bring a § 1983 claim against any individual acting under color of state law who allegedly violates her federal constitutional rights. *See Garczynski v. Bradshaw*, 573 F.3d 1158, 1165 (11th Cir. 2009).  Those claims will be discussed subsequently.

2.      _Res Judicata_

"*Res Judicata* or claim preclusion refers to the preclusive effect of a judgment in foreclosing relitigation of matters that were litigated or *could have been litigated* in an earlier suit." *I.A. Durbin, Inc. v. Jefferson Nat. Bank*, 793 F.2d 1541, 1549 (11th Cir. 1986) (emphasis added).  For *res judicata* to bar a subsequent suit, the defendant must prove: (1) a final judgment on the merits (2) rendered by a court of competent jurisdiction (3) with identical parties or privies and (4) the same cause of action in both cases. *Id.*

The parties agree that because Plaintiff Weathers has previously litigated gender discrimination claims against the City and its chief of police, *res judicata* applies to some claims; however, they disagree as to the extent of its application.  Defendants contend that *res judicata* bars Plaintiff's claims arising from acts that occurred prior to October 7, 2004–the date Judge Propst *granted* summary judgment in favor of the City and then-Chief Merrill on Plaintiff's gender discrimination claims.  On the other hand, Sergeant Weathers argues that *res judicata* only bars claims arising out of actions that occurred prior to December 8, 2003–the date she *filed* her previous complaint.  Thus, to determine whether *res judicata* precludes certain claims, this court must decide whether claims that *could have been litigated* include claims that arose *after* Sergeant Weathers filed her 2003 complaint.

>   Addressing a similar question, the Eleventh Circuit stated,

>   we do not believe that the res judicata preclusion of claims that "could have been brought" in earlier litigation includes claims which arise after the original pleading is filed in the earlier litigation. Instead, we believe that, for res judicata purposes, claims that "could have been brought" are claims in existence at the time the original complaint is filed or claims *actually* asserted by supplemental pleadings or otherwise in the earlier action.

14

*Manning v. City of Auburn*, 953 F.2d 1355, 1360 (11th Cir. 1992) (emphasis in original).

Applying the Eleventh Circuit's rule to the instant case, the court finds that Plaintiff Weathers,

who did not file any supplemental pleadings in her 2003 case, could have brought any gender

discrimination claim in the 2003 case that arose prior to the filing that complaint.  Therefore, *res*

*judicata* precludes Plaintiff Weathers from re-litigating gender discrimination claims that accrued

before she filed her complaint on December 8, 2003.  Thus, *res judicata* bars Plaintiff's Title VII

and § 1983 disproportionate discipline claims that arose in 2002 and the court grants judgment as

a matter of law in favor of the Defendants on these claims.  *Res judicata* does not, however, bar

Plaintiff's gender discrimination claims that arose *after* she filed her complaint but before Judge

Propst entered the final order in the 2003 case.

     **3.**     Title VII claims not contained in Plaintiff's EEOC charge

A plaintiff alleging Title VII violations may only assert those discrimination claims that

are reasonably related to or grow out of the allegations contained in her EEOC charge. *Danner v.*

*Phillips Petroleum Co.*, 447 F.2d 159, 162 (5th Cir. 1971).[4]  However, courts are "extremely

reluctant to allow procedural technicalities to bar claims" brought under Title VII. *Sanchez v.*

*Standard Brands, Inc.*, 431 F.2d 455, 460-61 (5th Cir. 1970).  As such, "the scope of an EEOC

complaint should not be strictly interpreted." *Id.* at 465.  Nevertheless, distinct claims that are not

related to or derived from the allegations in the EEOC charge cannot form the basis of a Title VII

civil action. *Equal Employment Opportunity Comm'n v. Brookhaven*, 614 F.2d 1022, 1024 (5th

---

[4]After the Fifth Circuit split and the Eleventh Circuit was established, the Eleventh
Circuit adopted as binding precedent all Fifth Circuit decisions handed down before the close of
business on September 30, 1981.  *See Bonner v. City of Prichard*, 661 F.2d 1206, 1207 (11th Cir.
1981).

Cir. 1980).

Plaintiff Weathers filed her EEOC charge on September 7, 2007.  In her charge, Sergeant

Weathers indicated that the City of Oxford discriminated against her because of her sex.

Specifically, Sergeant Weathers stated:

> I am a female and was hired by the City of Oxford on its Police Department in
> 1986.  I have been a Sergeant with the Department since 1996.  In March of 2007,
> Shawn Gibson, a male, was promoted from Sergeant to Lieutenant.  When I later
> found this out, I assumed I would be promoted as well since I had more seniority
> than him as far as total time with the Department and in the position of Sergeant.
> However, I was not promoted.  No announcement was made that the position was
> being filled.  Though Oxford Civil Service Rules state that a test is supposed to be
> given, no test was given.  The last test given was in 2001.  I took the test and
> made the highest total score.  Gibson had not taken the test.  I have been passed
> over for promotions throughout my employment with the City.  I have sued the
> City twice for sexual harassment and gender discrimination, in 1990 and 2003.
>
> I believe I was passed over for promotion because of my gender and/or retaliation
> for previous employment discrimination lawsuits against the City.  I am therefore
> making a claim under Title VII to the Civil Rights Act of 1964, as amended.

In essence, Plaintiff's EEOC charge alleges that the City has repeatedly retaliated and

discriminated against her by *failing to promote* her to lieutenant.  As a result, any other distinct

acts alleged in Plaintiff's complaint cannot form the basis of a viable Title VII claim.

Sergeant Weathers has pointed to no allegation in her EEOC charge that would allow the

court to conclude that she intended to have the EEOC investigate the majority of the claims she

now asserts.  In fact, Sergeant Weathers does not mention anything about working in the jail, at

the Complex, or at any other less-than-desirable assignment in her EEOC charge.  Sergeant

Weathers does not complain in her EEOC charge that the Defendants allowed men to return to

work on light duty after surgery but required her to return on full duty.  Neither does Sergeant

Weathers complain about sexual harassment, receiving disproportionate back pay, or being

16

required to work excessive weekends.  Because Plaintiff's undesirable assignments, disproportionate back pay, excessive weekends, and harassment claims are not reasonably related to or derived from the allegations contained in her EEOC charge, the Defendants are entitled to judgment as a matter of law on these Title VII claims.  Thus, the only Title VII claims remaining are the failure to promote claims.

    4.     <u>Title VII claims for acts that occurred prior to March 12, 2007</u>

Only those "unlawful employment practices[s]" that a plaintiff complains of in a timely-filed charge of discrimination to the EEOC can form the basis for Title VII liability. 42 U.S.C.A. § 2000e-5(e)(1) (West 2003).  The applicable charge must have been filed within 180 days "after the alleged unlawful employment practice occurred." *Id.*  Absent some basis for equitable tolling not raised here, this rule erects an absolute bar on recovery for discrete, discriminatory acts occurring outside the 180-day time period. *See Nat. R.R. Passenger Corp. v. Morgan*, 536 U.S. 101, 113 (2002).  Because "[e]ach discrete discriminatory act starts a new clock for filing charges alleging that act[,]" to recover for an act, a Title VII plaintiff must file a charge within 180 days of the discrete discriminatory act. *Id.*  Because Plaintiff Weathers filed her EEOC charge of discrimination on September 7, 2007, any Title VII claim based on any discrete discriminatory act, standing alone, that occurred *prior* to March 12, 2007 (180 days before the filing) is time barred.

Plaintiff's failure to promote claims are time barred because she filed her EEOC charge too late.  Sergeant Weathers alleges that the Defendants unlawfully failed to promote her in December 2005, April 2006, and in March 2007.  Sergeant Weathers does not dispute that her failure to promote claims regarding the 2005 and 2006 promotions are timed barred.  However,

the parties dispute whether Plaintiff's failure to promote claim based on the March 2007
promotion of Shawn Gibson is time barred.  Defendants assert that Gibson's promotion occurred
on March 7, 2007–five days outside the required time period.  Sergeant Weathers argues
summary judgment is not appropriate because the March 7, 2007 date of Shawn Gibson's
promotion is not supported by sufficient evidentiary proof.

In support of the March 7, 2007 promotion date, Defendants provide a Personnel
Requisition, Certification, and Appointment form, dated March 5, 2007, that appoints Shawn
Gibson to Lieutenant.  Defendants also provide an employee status form, signed by Chief Merrill
and Mayor Leon Smith, that shows Gibson's promotion was effective March 7, 2007.  Sergeant
Weathers questions the legitimacy of the appointment form because the list of eligibles on the
form contains the names of two persons who had already been promoted to lieutenant.  However,
Sergeant Weathers provides no evidence to refute the accuracy of either document or to
substantiate a claim that the City promoted Gibson *on or after* March 12, 2007.

To determine whether Plaintiff's doubts regarding the validity of Gibson's personnel
forms create a genuine issue of material fact, the court "must view the evidence presented
through the prism of the substantive evidentiary burden."  *Anderson v. Liberty Lobby, Inc.*, 477
U.S. 242, 254 (1986); *Cottle v. Storer Commc'n, Inc.*, 849 F.2d 570, 575 (11th Cir. 1988).  While
the court must refrain from weighing the evidence or making credibility determinations, it does
not have to give the plaintiff the benefit of every inference but only of every reasonable
inference." *See Anderson*, 477 U.S. at 255; *Stewart v. Booker T. Washington Ins. Co.*, 232 F.3d
844, 848 (11th Cir. 2000); *Graham v. State Farm Mut. Ins. Co.*, 193 F.3d 1274, 1282 (11th Cir.
1999).

18

Even viewing the evidence and the inferences drawn from the evidence in the light most favorable to Sergeant Weathers, the court finds that none of the evidence refutes or challenges the evidence that Defendant City promoted Gibson on or before March 7, 2007.  To survive summary judgment, Sergeant Weathers "must do more than simply show that there is some metaphysical doubt" regarding Gibson's hire date. *See Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 586 (1986).  Therefore, no genuine issue of material fact exists as to whether the City promoted Gibson within the 180 days prior to the date Sergeant Weathers filed her EEOC charge.  Thus, because of the statutory bar, the Defendants are entitled to judgment as a matter of law on all of Plaintiff's Title VII failure to promote claims, including the claim that the City discriminatorily failed to promote Sergeant Weathers to lieutenant in March of 2007.

     5.     Section 1983 claims that occurred prior to January 20, 2007

To pursue a claim under § 1983 for gender discrimination, the plaintiff need not file an EEOC charge; instead, the statute of limitations for a § 1983 claim is the limitations period for "personal injury actions" in the state in which the district court is situated. 42 U.S.C.A. § 1988; *Wilson v. Garcia*, 471 U.S. 261, 276 (1985).  Therefore, the general two year limitations period of Alabama Code § 6-2-38(l) (2005) applies to Plaintiff's § 1983 claims in this case. *See Baker v. Birmingham Bd. of Educ.*, 531 F.3d 1336, 1337 (11th Cir. 2008).  Sergeant Weathers and the Defendants agree that, because she filed her complaint on January 20, 2009, any § 1983 claim based on any act occurring prior to January 20, 2007 is time barred.  Plaintiff's claims of excessive weekends, disproportionate back pay, undesirable assignments to the third shift, and failure to promote (with the exception of the claim involving Shawn Gibson in March 2007) all arose before January 20, 2007 and thus fall outside the statute of limitations.  Thus, no genuine

19

issue of material fact exists and the Defendants are entitled to judgment as a matter of law on these § 1983 claims.  As a result, the following § 1983 claims remain: failure to promote Sergeant Weathers instead of Shawn Gibson, undesirable assignments, and sexual harassment.

B.     *Substantive Analysis of Plaintiff's Remaining Claims*

Plaintiff Weathers uses § 1983 as a parallel remedy for the Defendants' alleged Title VII violations; therefore, the elements of her § 1983 discrimination claims and the manner of inferring discriminatory intent are the same elements and manner as required by Title VII. *See Cross*, 49 F.3d at 1507-08.  In Plaintiff's remaining claims, she alleges that the Defendants' discriminatory conduct violated her constitutionally guaranteed Fourteenth Amendment rights to be free from unlawful gender discrimination in public employment. *See Cross v. State of Ala., State Dept. of Mental Health & Mental Retardation*, 49 F.3d 1490, 1507 (11th Cir. 1995). Section 1983 enables Plaintiff Weathers to enforce her federal constitutional rights against state actors who unlawfully discriminate against her. *Garczynski v. Bradshaw*, 573 F.3d 1158, 1165 (11th Cir. 2009).

To establish that the Defendants' alleged discrimination violated her constitutional rights, Sergeant Weathers must show that the Defendants acted with a discriminatory motive or purpose. *Tanner v. McCall*, 625 F.2d 1183, 1192 (11th Cir. 1980).  "[O]nly the most blatant remarks, whose intent could mean nothing other than to discriminate on the basis of some impermissible factor constitute direct evidence of discrimination." *Wilson v. B/E Aerospace, Inc.*, 376 F.3d 1079, 1086 (11th Cir. 2004) (quotation omitted).  In § 1983 cases where direct evidence of employment discrimination is lacking, as is the case with Sergeant Weathers's claims, the court analyzes the claims under the *McDonnell Douglas* framework, which requires her to create an

inference of discrimination through her *prima facie* case. *See McDonnell Douglas Corp. v. Green*, 411 U.S. 792, 802-03 (1973).

Once the plaintiff has made out the elements of the *prima facie* discrimination case, the burden shifts to the employer "to articulate some legitimate, nondiscriminatory reason for [its employment action]." *Texas Dept. of Comty. Affairs v. Burdine*, 450 U.S. 248, 253 (1981) (quotation omitted).  If the employer meets this burden, the plaintiff must provide evidence that the proffered reasons were pretextual. *See McDonnell Douglas*, 411 U.S. at 804.  The ultimate burden of persuading the trier of fact that the defendant intentionally discriminated against the plaintiff remains with the plaintiff at all times. *Burdine*, 450 U.S. at 253; *see Reeves v. Sanderson Plumbing Prods., Inc.*, 530 U.S. 133, 146 (2000).

1.      Section 1983 Failure to Promote Claims

To satisfy her initial burden of establishing the elements of her failure to promote claim, Sergeant Weathers must show "that: (1) she is a member of a protected class; (2) she was qualified and applied for the promotion; (3) she was rejected despite her qualifications; and (4) other equally or less qualified employees who were not members of the protected class were promoted." *Wilson v. B/E Aerospace, Inc.*, 376 F.3d 1079, 1089 (11th Cir. 2004) (citation omitted); *see also Rioux v. City of Atlanta, Ga.*, 520 F.3d 1269, 1275 n. 5 (11th Cir. 2008) (noting that Title VII and § 1983 claims have the same elements where the claims are based on the same set of facts).

Because the undisputed facts show that Defendant Partridge was not chief at the time that Gibson was promoted, he did not make the promotion decision and could not possibly be personally liable under § 1983 for Plaintiff's failure to promote claim.  Therefore, the court

21

grants Defendant Partridge's motion for summary judgment on Plaintiff's remaining § 1983 failure to promote claim.

The City concedes that Sergeant Weathers can meet her initial burden of establishing the elements of a § 1983 failure to promote claim. Thus, the burden shifts to the City to articulate a legitimate, nondiscriminatory reason for promoting Shawn Gibson rather than Sergeant Weathers to lieutenant. *See McDonnell Douglas Corp.*, 411 U.S. at 802-03.

The City's articulated reason for promoting Shawn Gibson is that Gibson was better qualified and better suited for the job than Sergeant Weathers. A belief that another candidate was better qualified for a promotion is a legitimate, non-discriminatory reason for a promotion. *Wilson*, 376 F.3d at 1089-90. To support its assertion, the City provided excerpts from Gibson's file showing above-average performance reviews, certificates of completed training, and letters from citizens commending Gibson for his police work. The parties do not dispute that Gibson was qualified for the promotion.

Additionally, the City provides excerpts from Plaintiff's file showing write-ups, a letter informing Sergeant Weathers that she did not have enough training hours, and a letter from a citizen accusing her of rude behavior while on duty. In response, Sergeant Weathers asserts that the excerpts from her file are inadmissible hearsay and thus not substantial evidence; however, for summary judgment purposes, the court can consider evidence as long as the evidence is of a type that *would be admissible* into evidence. *See* Fed. R. Civ. P. 56. Also, the City does not offer the excerpts from Gibson's and Plaintiff's files for the truth of the information contained in the excerpts, but rather for evidence of what information the City considered when making the promotion decision; thus, even at trial, the excerpts would not be hearsay. *See* Fed. R. Evid. R.

22

801(c). The City has presented sufficient evidence to support its assertion that the decision to promote Gibson was based on a legitimate, non-discriminatory reason.  Therefore, the City has met its burden of persuasion.

Plaintiff Weathers may demonstrate that the City's reason for promoting Gibson was pretextual by revealing "such weaknesses, implausibilities, inconsistencies, incoherencies, or contradictions in the [City]'s proffered legitimate reason[] for its action that a reasonable factfinder could find [the reason] unworthy of credence." *See Cooper v. S. Co.*, 390 F.3d 695, 725 (11th Cir. 2004), *cert. denied*, 546 U.S. 960 (2005) (quoting *Combs v. Plantation Patterns*, 106 F.3d 1519, 1538 (11th Cir.1997)). However, a reason is not pretext for discrimination unless the plaintiff shows "*both* that the reason was false, *and* that discrimination was the real reason." *Brooks v. County Comm'n of Jefferson County*, 446 F.3d 1160, 1163 (11th Cir. 2006) (emphasis in original) (quotation omitted).

In the context of a promotion, "a plaintiff cannot prove pretext by simply arguing or even by showing that [s]he was better qualified than the [person] who received the position [s]he coveted. A plaintiff must show not merely that the defendant's employment decisions were mistaken but that they were in fact motivated by [gender]." *Id.* (quoting *Alexander v. Fulton County*, 207 F.3d 1303, 1339 (11th Cir. 2000)).  Because the City's proffered reason–Gibson's better qualifications–was one that might motivate a reasonable employer, Sergeant Weathers "cannot recast the reason but must meet it head on and rebut it."  *See Wilson v. B/E Aerospace, Inc.*, 376 F.3d 1079, 1088 (11th Cir. 2004).  Furthermore, a plaintiff must show that the disparities between the successful applicant's and her own qualifications were "of such weight and significance that no reasonable person, in the exercise of impartial judgment, could have

chosen the candidate selected over the plaintiff." *Cooper*, 390 F.3d at 732 (quotation omitted); *see also Ash v. Tyson Foods, Inc.*, 546 U.S. 454, 456-57 (2006) (approving of this language from *Cooper*).

Sergeant Weathers attempts to prove pretext by claiming that the City's proffered reasons are unworthy of belief because, before the promotion, Chief Merrill demonstrated his discriminatory animus toward Sergeant Weathers by not effectively evaluating her qualifications and assigning her to the jail and the Complex. Also, Sergeant Weathers claims that because she is the only female supervisor on the force and has litigated in the past with the City, "the gender and retaliation based reasons for the Defendants' actions are self-evident."

However, Sergeant Weathers fails to attack "head on" the reason for the City's decision: its belief that Gibson was more qualified than she. Moreover, Plaintiff's arguments alleging pretext fail because she does not present *any* evidence that she was so much more qualified than Gibson that no reasonable, impartial person could have chosen Gibson over Sergeant Weathers. To the contrary, the reasons for promoting Gibson instead of Sergeant Weathers are sound and supported by evidence. Further, district courts should not "sit as a super-personnel department that reexamines an entity's business decisions." *Elrod v. Sears, Roebuck & Co.*, 939 F.2d 1466, 1470 (11th Cir. 1991). Because Sergeant Weathers has offered no evidence to show that the City's reason for its promotion decision is unworthy of credence, no genuine issue of material fact exists and the Defendant City is entitled to judgment as a matter of law on Plaintiff's § 1983 failure to promote claim.

2.      Section 1983 Undesirable Assignments Claims

Sergeant Weathers claims that the Defendants discriminated against her by transferring

24

her to the jail and then to the Complex.  Even though other sergeants have asked to be assigned

to the Complex, Sergeant Weathers alleges that her assignments to the jail and Complex were

undesirable.  Sergeant Weathers asserts that, she was not permitted to supervise any officers or

do what she considers real police work at the jail or at the Complex.

The reassignment of job duties can constitute unlawful discrimination where the new

assignment involves less responsibility and more menial tasks than the previous assignment. *See*

*McCabe v. Sharrett*, 12 F.3d 1558, 1563-64 (11th Cir. 1994).  However, if the Defendants can

articulate a legitimate non-discriminatory reason for the reassignment, the burden shifts to

Sergeant Weathers to rebut the reason.  *See McDonnell Douglas Corp v. Green*, 411 U.S. 792,

804 (1973).

Defendants assert that Sergeant Weathers was assigned to the jail and Complex because

former Chief Merrill and Chief Partridge believed that Plaintiff's poor supervisory abilities were

the cause of the third shift's low morale.  Therefore, Chief Merrill made the decision to transfer

Sergeant Weathers to the jail where she would have less supervisory authority over the officers.

Also, Merrill believed that a permanent jail supervisor would free up the shifts of lieutenants and

sergeants who had been supervising the jail in addition to their other duties.  Further, the

Defendants claim that Chief Merrill transferred Ms. Weathers to the Complex because the

presence of a sergeant there would make the citizens feel safer.  Having failed to show a genuine

issue of material fact regarding whether the Defendants' reasons for transferring her were

pretextual, Plaintiff's claims cannot withstand Defendants' motion for summary judgment.

Sergeant Weathers also claims that the Defendants did not allow her to return to work on

"light duty" after her abdominal surgery.  She asserts that the Defendants discriminated against

her because Defendants allowed males who had had surgery to return on light duty and alter their uniforms during their recovery period.  Defendants dispute Plaintiff's version of the facts.  They contend that after her surgery, they accommodated Plaintiff's needs by not requiring her to wear her heavy duty belt or radio.  Further, Defendants have presented evidence that Sergeant Weathers, wearing her duty gun belt, flashlight, and cuffs, was performing private security work in her full uniform only three days after Plaintiff's doctor informed the Defendants that Sergeant Weathers needed to only work light duty.  Nevertheless, at the summary judgment stage, the court must resolve this factual dispute in favor of Sergeant Weathers.

Although Sergeant Weathers disputes the Defendants' version of the facts related to her "light duty" undesirable assignments claims, she has failed to meet her burden to produce evidence showing a genuine issue of *material* fact as to whether the Defendants' reasons were a pretext for gender discrimination or retaliation.  Even if the court accepts Plaintiff's version of the facts–that the Defendants assigned her to the jail and after her surgery the Defendants did not give her "light duty" but instead assigned her to the complex and required her to wear her regular uniform–Sergeant Weathers has still not produced any direct or indirect evidence of discriminatory intent as required under the *McDonnell Douglas* framework.

Defendants maintain that they gave Sergeant Weathers job assignments according to what they believed was best for the OPD and the community.  Additionally, Plaintiff's supervisor believed she could handle regular duty because he saw her doing off duty security work in her full uniform.  Although Sergeant Weathers might not agree with the Defendants' decision or the reasons behind their decision, the burden to show a discriminatory motive rests with Sergeant Weathers alone.  Because Sergeant Weathers has not provided evidence to rebut the Defendants'

reasons for assigning her to the jail, the Complex, and to regular duty, the Defendants are entitled to judgment as a matter of law on Plaintiff's § 1983 undesirable assignments claims.

3.    Section 1983 Sexual Harassment Claims

Plaintiff's harassment claims under § 1983 are two-fold.  First, Sergeant Weathers alleges that the OPD's male personnel called her derogatory names on an unknown number of occasions. Second, Sergeant Weathers alleges that Defendant Partridge harassed her by following her during her lunch breaks.  For the reasons discussed below, neither allegation rises to the level of actionable harassment in violation of Plaintiff's constitutional rights.

"In the cases traditionally described as hostile-environment cases, an employer's harassing actions toward an employee do not constitute employment discrimination under [§ 1983] unless the conduct is sufficiently severe or pervasive to alter the conditions of [the victim's] employment and create an abusive working environment." *See Mendoza v. Borden, Inc.*, 195 F.3d 1238, 1246 (11th Cir. 1999).  "To establish that a workplace constitutes a hostile work environment, a plaintiff must show that the workplace is permeated with discriminatory intimidation, ridicule, and insult, that is sufficiently severe or pervasive to alter the conditions of the victim's employment and create an abusive working environment." *Rojas v. Florida*, 285 F.3d 1339, 1344 (11th Cir. 2002) (internal quotation marks omitted).

*Harassment based on alleged name-calling*

In her brief in opposition to the Defendants' motion for summary judgment, Sergeant Weathers asserts that she has endured a hostile work environment for the past twenty years. Sergeant Weathers alleges that her superiors, fellow supervisors, and male subordinates called her sexist names such as Medusa,  Her Hitler, and Bitch on an unknown number of occasions.

27

However, Plaintiff's harassment claim based on this name-calling fails because Sergeant Weathers has failed to show a genuine issue of material fact regarding the severity or pervasiveness of the name calling.

To determine whether harassment is sufficiently severe or pervasive, the court considers the totality of the circumstances rather than acts in isolation and must evaluate the objective severity of the harassment from the perspective of a reasonable person in the plaintiff's position. *See Mendoza v. Borden, Inc.*, 195 F.3d 1238, 1246 (11th Cir. 1999). Four factors guide the analysis: (1) the frequency of the conduct; (2) the severity of the conduct; (3) whether the conduct is physically threatening or humiliating; and (4) whether the conduct unreasonably interferes with the employee's job performance. *Faragher v. City of Boca Raton*, 524 U.S. 775, 787-88 (1998).

Plaintiff's hostile work environment harassment claim cannot survive the Defendants' motion for summary judgment if the claim is based solely on the allegations that the City's employees referred to her as "Medusa," "the Queen of the Damned," "the Bitch," and "Her Hitler" on an unknown number of occasions. First, Sergeant Weathers has produced no evidence of the frequency of the name-calling. Second, the evidence produced by Sergeant Weathers, even when viewed in a light most favorable to her, does not show that the conduct was severe, physically threatening or humiliating, or that the conduct unreasonably interfered with her job performance. Thus, Sergeant Weathers has failed to show that the alleged name-calling was severe or pervasive enough to meet the definition of a hostile work environment. Accordingly, Plaintiff's § 1983 harassment claim based on the name-calling fails and the Defendants are entitled to summary judgment.

28

*Harassment based on Defendant Partridge's alleged following Sergeant Weathers during her lunch breaks*

To establish that harassing conduct was sufficiently severe or pervasive to alter an employee's terms or conditions of employment, a plaintiff must satisfy a subjective and an objective component. *Mendoza v. Borden, Inc.*, 195 F.3d 1238, 1246 (11th Cir. 1999). To satisfy the first component, the employee must "subjectively perceive" the harassment as sufficiently severe and pervasive to alter the terms or conditions of employment. *Id.*

Viewing the evidence in a light most favorable to Sergeant Weathers, the court finds that Plaintiff Weathers has not presented evidence that Defendant Partridge's following her altered the terms and conditions of her employment. Sergeant Weathers admitted in her deposition that Defendant Partridge's following her was "just an annoyance." Because Plaintiff Weathers did not *subjectively* perceive Partridge's alleged harassment as severe or pervasive, no genuine issue of material fact exists as to her § 1983 harassment claims and the Defendants are entitled to judgment as a matter of law.

## CONCLUSION

For the reasons stated above, the court GRANTS the Defendants' motion for summary judgment. The court will simultaneously enter a separate order to that effect.

DONE and ORDERED this 29th day of March, 2010.

KARON OWEN BOWDRE
UNITED STATES DISTRICT JUDGE

29